JOHN R. FLEMING,

    Plaintiffs,

v.

MOSES CONE MEDICAL SERVICES, INC.
d/b/a CONE HEALTH; ALAMANACE
REGIONAL MEDICAL CENTER, INC.;

    Defendants.

CIVIL ACTION

No. 1:20CV1034

FILED NOV 16 2020, Clerk U.S. District Court, Greensboro, NC

## COMPLAINT AT LAW

NOW COMES John R. Fleming ("Mr. Fleming"), the Plaintiff in the above-captioned action and, complaining of False Imprisonment state as follows:

## NATURE OF THE ACTION

This is Plaintiff's false imprisonment action against the Defendants seeking an award of damages and costs.

## PARTIES AND JURISDICTION

1. John R. Fleming, ("Plaintiff"), is a resident of Middlesex County, MA.

2. Moses Cone Medical Services, Inc. d/b/a Cone Health, ("Cone Health"), is a private, non-for-profit corporation doing business in Guilford County, NC, whose address is 1200 N. Elm St., Greensboro, NC 27401.

3. Alamance County Regional Medical Center ("ARMC") is a non-for-profit corporation owned by Cone Health and doing business in Alamance County, NC, whose address is 1200 N. Elm St., Greensboro, NC 27401.

4. Jurisdiction is proper before this Court under 28 U.S.C. § 1332(1) as the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000.00.

5. Venue is proper under 28 U.S.C. § 1391(b)(1) as Defendant Cone Health is a resident of North Carolina.

## FACTS

6. In March of 2016, Plaintiff was diagnosed with Alzheimer's disease by Dr. James Mastriani, a neurologist with the University of Chicago's Department of Neurology.

7. In June of 2016 Plaintiff's Alzheimer's disease diagnosis was confirmed by Dr. Mohammad Bolouri, a neurologist with the Alzheimer's Memory Center in Charlotte, N.C.

8. In October of 2017 Plaintiff's Alzheimer's disease diagnosis was confirmed by Dr. Mitchell Heflin, a neurologist with the Duke University Medicine's Neurology Department.

9. In July, 2016, Plaintiff began receiving treatment from Dr. Jasmine Singh with the Kernodle Clinic in Burlington, N.C. as his primary care physician.

10. On Thursday, November 16, 2017, Deborah J. Fleming was Plaintiff's wife, sole housemate, sole caretaker and his Health Care Agent under a North Carolina Medical Power of Attorney and Enduring Power of Attorney.

11. On Thursday, November 16, 2017, Mrs. Fleming observed that Plaintiff's Alzheimer's disease had progressed to the extent that he was incapable of remembering the steps entailed in making himself a peanut butter sandwich.

12. On Thursday, November 16, 2017, Mrs. Fleming observed Plaintiff with rapid breathing, pale, sweating and suffering from diarrhea and delirium.

13. Plaintiff stated to Mrs. Fleming that his stomach was hurting.

14. That evening, on Thursday, November 16, Mrs. Fleming took Plaintiff to the ARMC Emergency Room and examined Dr. Wao who palpitated the Plaintiff's abdomen and noticed tenderness over the bladder.

15. That evening on Thursday, November 16, Plaintiff was discharged from ARMC.

16. On Friday, November 17, Plaintiff woke up from a nap and Mrs. Fleming witnessed Plaintiff's knees buckle beneath him and he fell down.

17. Also on Friday, November 17, Mrs. Fleming witnessed:

    a. Plaintiff breathing rapidly, crying, doubling over in pain,

    b. Plaintiff complaining to Mrs. Fleming of chest pain, and

    c. Plaintiff suffering from delusions.

18. Also on Friday, November 17, Mrs. Fleming made several phone calls to Dr. Singh and the Kernodle Clinic seeking medical advice and treatment for her husband but was unable to speak with a doctor.

19. Also on November 17, Mrs. Fleming made several phone calls Dr. Bolouri and the Alzheimer's Memory Center seeking medical advice and treatment for her husband but was unable to speak to a doctor.

20. Also on November 17, and subsequent to the phone calls alleged in ¶¶22-23, Mrs. Fleming drove Plaintiff to ARMC Emergency Room.

21. Mrs. Fleming accompanied Mr. Plaintiff into the emergency room and made arrangements with Alamance Hospital's staff for Plaintiff to be examined and treated as soon as possible (the "ARMC Staff").

22. Prior to Plaintiff being examined, Mrs. Fleming presented to the ARMC Staff the North Carolina Medical Power of Attorney the Plaintiff executed naming Mrs. Fleming his Health Care Agent.

23. Subsequent to Mrs. Fleming presenting the Medical Power of Attorney and in response to Mrs. Fleming stating her desire to accompany her husband into the examination room, the ARMC Staff stated to Mrs. Fleming that she could not accompany Plaintiff into the examination room.

24. Plaintiff was escorted by ARMC Staff into an examination room where, upon information and belief, Plaintiff received an examination by a medical professional.

25. Approximately 15 minutes after Plaintiff was escorted to an examination room, a member of the ARMC Staff escorted Mrs. Fleming to her husband's hospital room.

26. In Plaintiff's examination room a psychiatric nurse stated to Mrs. Fleming that her husband had voluntarily committed himself, and that this commitment would be for a duration of 12 hours.

27. The Psychiatric Nurse stated to Mrs. Fleming that a psychiatrist would be performing an evaluation of Plaintiff over a television.

28. The Psychiatric Nurse stated to Mrs. Fleming the Alamance Psychiatric Ward's visiting rules, passcodes, phone numbers, hours and other items.

29. Plaintiff's wallet and cell phone were taken and handed to Mrs. Fleming.

30. A uniformed Burlington Police Officer was stationed outside of Plaintiff's hospital room.

31. Upon information and belief, early in the morning of November 18, and outside of the presence of Mrs. Fleming, Plaintiff was examined by a psychiatrist by either telephone or video conference (the "Tele-Psychiatrist").

32. Between 2:00 a.m. and 4:00 a.m. the Tele-Psychiatrist executed an affidavit on personal knowledge recommending to the Alamance County Superior Court Clerk that Plaintiff be involuntarily committed (the "Affidavit").

33. The Tele-Psychiatrist performed the examination of Plaintiff and executed the Affidavit as an agent of Defendant MOSES CONE MEMORIAL HEALTH SYSTEM INC., d/b/a CONE HEALTH.

34. The Tele-Psychiatrist performed the examination of Plaintiff and executed the Affidavit as an agent of Defendant ALAMANCE REGIONAL MEDICAL CENTER INC.

35. Prior to executing the Affidavit, the Tele-Psychiatrist did not communicate with Mrs. Fleming.

36. Prior to executing the Affidavit, no medical doctor communicated with Mrs. Fleming about Plaintiff's mental health and medical treatment history prior to the Tele-Psychiatrists sworn recommendation for involuntary commitment.

37. Prior to executing the Affidavit, no medical doctor or psychiatrist communicated with Mrs. Fleming about:
    a. the availability of others to care for, supervise and assist the Plaintiff in the conduct of his daily responsibilities and social relations, to satisfy his needs for nourishment, person or medical care, shelter or self-protection and safety;

b. current and previous mental illness treatment history;

    c. present or past statements regarding suicide; or

    d. capability to commit suicide.

38. At 3:50 A.M. a North Carolina Alamance County Magistrate issued an involuntary inpatient commitment order against Mr. Fleming based upon the Tele-Psychiatrist's sworn recommendation for involuntary inpatient commitment.

39. At 8:10 A.M. Mrs. Fleming was awoken by a phone call from a woman who identified herself as Claudine, a social worker at Alamance Hospital (the "Social Worker").

40. The Social Worker stated to Mrs. Fleming:

    a. That Plaintiff had been accepted for treatment at Strategic Behavioral Health;

    b. That she knew Mrs. Fleming wanted a closer facility;

    c. That the Plaintiff and Mrs. Fleming were lucky to get into Strategic because it was a very good place for senior citizens; and

    d. That the Plaintiff would be staying at Strategic for the next 5-10 days.

41. Mrs. Fleming stated to the Social Worker:

    a. That the Plaintiff would not be going to Strategic;

    b. That she had not spoken with any psychiatrist regarding Plaintiff;

    c. That she had not spoken to any medical doctor regarding Plaintiff;

    d. That nothing could be decided about Plaintiff's treatment until she was consulted by a medical doctor; and

    e. That Plaintiff had Alzheimer's Disease which was untreatable under accepted medical knowledge, precluding the need for psychiatric treatment at Strategic.

42. In response, the Social Worker stated to Mrs. Fleming that at 2:30 a.m. that morning the Plaintiff had been involuntarily committed.

43. Mrs. Fleming responded, stating:

    a. That she was Plaintiff's sole caregiver
    b. That she held Plaintiff's Medical Power of Attorney.
    c. That it was essential for her to be consulted when assessing Plaintiff's behavior.
    d. That she was driving to Alamance Hospital.
    e. That Plaintiff must be released immediately upon her arrival.

44. At approximately 9:00 AM Mrs. Fleming was pulling out of her driveway when she received a call from someone stating that they were a doctor at ARMC (the "ARMC Doctor").

45. The ARMC Doctor stated questions to Mrs. Fleming about Plaintiff's background.

46. Mrs. Fleming stated to the ARMC Doctor:

    a. That she refused to answer any questions.
    b. That she questioned why she was not asked these questions before the Plaintiff was involuntarily committed.

47. At approximately 9:30 A.M. Mrs. Fleming arrived at ARMC and stated to the ARMC Staff that she demanded the Plaintiff be released and discharged immediately.

48. Mrs. Fleming again presented the ARMC Staff with the Plaintiff's Medical Power of Attorney naming her his Health Care Agent.

49. In response to Mrs. Fleming's stated demands the ARMC Staff refused to release and discharge the Plaintiff to his wife's care.

50. Between approximately 9:30 a.m. and 12:30 p.m. Mrs. Fleming continuously stated demands to the ARMC Staff that the Plaintiff be released to her care and continuously argued with the ARMC Staff who continuously refused to release the Plaintiff.

51. Throughout November 18, 2017, Plaintiff wanted to be discharged and released from ARMC to his wife's care.

52. At an unknown time on November 18 a Doctor Cory Forbach, MD, examined the Plaintiff and stated the Plaintiff was "at low risk of suicide and is not likely to present a danger to himself or others; as a result, and given that his wife is very involved with his care, I will keep him voluntary at this time."

53. At 2:31 p.m. the ARMC Staff released and discharged Plaintiff to Mrs. Fleming's care.

## COUNT I – FALSE IMPRISONMENT
## JOHN FLEMING v. MOSES CONE MEMORIAL HEALTH SYSTEM D/B/A CONE HEALTH

### A. Due Process & False Imprisonment

54. The common law tort of false imprisonment occurs when an individual is illegally restrained against his will. *Myrick v. Cooley*, 371 S.E.2d 492, 494, 91 N.C.App. 209, 212 (N.C. App. Ct., 1988).[1]

55. The North Carolina Mental Health, Developmental Disabilities, and Substance Abuse Act of 1985, (the "Mental Health Act," or the "Act"), provides the State of North Carolina the power to restrain someone against their will by involuntarily committing them if a clerk

---

[1] See, also, N.C. Const. art. I, §19 ("[n]o person shall . . . in any manner be deprived of his . . . liberty but by the law of the land"); *Alt v. Parker*, 435 S.E.2d 773, 779, 112 N.C. App. 307 (1993) (explaining that the same interest protected by claims for deprivation of due process by unlawful restraint is protected by the tort of false imprisonment).

or magistrate finds probable cause that a person is mentally ill and dangerous to himself or others. §122C-201.

56. The Act provides that probable cause for involuntary inpatient commitment is established by an examination by a medical doctor or psychologist licensed in North Carolina (the "Statutory Commitment Examination"). §122C-261, 263.

57. The Statutory Commitment Examination must include an assessment of the person's:

    a. Current and previous mental illness treatment history (§122C-263(c)(1));

    b. Ability to survive safely without inpatient commitment, including the availability of supervision from family, friends or others ((§122C-263(c)(3)).

    c. Dangerousness to self, which entails:

        i. The individual has acted in ways to show that without care, supervision and the continued assistance of others not otherwise available, to exercise self-control, judgment, and discretion in the conduct of his daily responsibilities and social relations, or to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety; and

        ii. That there is a reasonable probability of his suffering serious physical debilitation within the near future unless adequate treatment is given pursuant to the Act's involuntary or voluntary commitment; or

        iii. That the individual has attempted suicide or threatened suicide and that there is a reasonable probability of suicide unless adequate treatment is given pursuant to this article (§122C-3(11)).

58. As Plaintiff's wife, sole caretaker and health care agent, an assessment into the availability of the continued assistance of others requires reasonable attempts to consult with Mrs. Fleming.

59. As Plaintiff's wife, sole caretaker and health care agent, an assessment into Plaintiff's current and previous mental illness treatment history requires reasonable attempts to consult with Mrs. Fleming.

60. As Plaintiff's wife, sole caretaker and health care agent, an assessment of the Plaintiff's capacity to commit suicide requires reasonable attempts to consult with Mrs. Fleming.

61. The involuntary commitment of Mr. Fleming was illegal because Mrs. Fleming was never consulted by the Tele-Psychiatrist or a Medical Doctor prior to Mr. Fleming's involuntary commitment.

62. Defendant MOSES CONE MEMORIAL HEALTH SYSTEM INC. d/b/a CONE HEALTH is liable for the tort of false imprisonment when its agents, the ARMC Staff and the Tele-Psychiatrist, illegally restrained Plaintiff against his will and the will of his Health Care Agent.

WHEREFORE, Plaintiff JOHN R. FLEMING seeks a judgment in his favor for Count I – False Imprisonment, and against Defendant MOSES CONE MEDICAL SERVICES, INC. d/b/a CONE HEALTH, and an award of money damages and costs.

## COUNT II – FALSE IMPRISONMENT
## JOHN FLEMING v. ALAMANCE COUNTY MEDICAL CENTER, INC.

**B. Due Process & False Imprisonment**

63. The common law tort of false imprisonment occurs when an individual is illegally restrained against his will. *Myrick v. Cooley*, 371 S.E.2d 492, 494, 91 N.C.App. 209, 212 (N.C. App. Ct., 1988).[2]

64. The North Carolina Mental Health, Developmental Disabilities, and Substance Abuse Act of 1985, (the "Mental Health Act," or the "Act"), provides the State of North Carolina the power to restrain someone against their will by involuntarily committing them if a clerk or magistrate finds probable cause that a person is mentally ill and dangerous to himself or others. §122C-201.

65. The Act provides that probable cause for involuntary inpatient commitment is established by an examination by a medical doctor or psychologist licensed in North Carolina (the "Statutory Commitment Examination"). §122C-261, 263.

66. The Statutory Commitment Examination must include an assessment of the person's:

   d. Current and previous mental illness treatment history (§122C-263(c)(1));

   e. Ability to survive safely without inpatient commitment, including the availability of supervision from family, friends or others ((§122C-263(c)(3)).

   f. Dangerousness to self, which entails:

      i. The individual has acted in ways to show that without care, supervision and the continued assistance of others not otherwise available, to exercise self-control, judgment, and discretion in the conduct of his daily

---

[2] See, also, N.C. Const. art. I, §19 ("[n]o person shall . . . in any manner be deprived of his . . . liberty but by the law of the land"); *Alt v. Parker*, 435 S.E.2d 773, 779, 112 N.C. App. 307 (1993) (explaining that the same interest protected by claims for deprivation of due process by unlawful restraint is protected by the tort of false imprisonment).

responsibilities and social relations, or to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety; and

ii. That there is a reasonable probability of his suffering serious physical debilitation within the near future unless adequate treatment is given pursuant to the Act's involuntary or voluntary commitment; or

iii. That the individual has attempted suicide or threatened suicide and that there is a reasonable probability of suicide unless adequate treatment is given pursuant to this article (§122C-3(11)).

67. As Plaintiff's wife, sole caretaker and health care agent, an assessment into the availability of the continued assistance of others requires reasonable attempts to consult with Mrs. Fleming.

68. As Plaintiff's wife, sole caretaker and health care agent, an assessment into Plaintiff's current and previous mental illness treatment history requires reasonable attempts to consult with Mrs. Fleming.

69. As Plaintiff's wife, sole caretaker and health care agent, an assessment of the Plaintiff's capacity to commit suicide requires reasonable attempts to consult with Mrs. Fleming.

70. The involuntary commitment of Mr. Fleming was illegal because Mrs. Fleming was never consulted by the Tele-Psychiatrist or a Medical Doctor prior to Mr. Fleming's involuntary commitment.

71. Defendant ALAMANCE COUNTY REGIONAL MEDICAL CENTER INC. is liable for the tort of false imprisonment when its agents, the ARMC Staff and the Tele-Psychiatrist, illegally restrained Plaintiff against his will and the will of his Health Care Agent.

WHEREFORE, Plaintiff JOHN R. FLEMING seeks a judgment in his favor for Count II – False Imprisonment, and against Defendant ALAMANCE COUNTY REGIONAL MEDICAL CENTER, INC., and an award of money damages and costs.

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*John R. Fleming*
John R. Fleming

*Deborah Fleming*
Deborah Fleming – Holder of John R. Fleming's Enduring Power of Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

*John R. Fleming*
John R. Fleming

Date of singing: 11/13/2020

*Deborah Fleming*
Deborah Fleming – Holder of John R. Fleming's Enduring Power of Attorney

John R. Fleming – Plaintiff
Deborah Fleming – Holder of John R. Fleming's Enduring Power of Attorney
78 Fairview Ave.
Belmont, MA 02478
708-912-0404
coyotedogs@msn.com